## BEDFORD MILLS, Inc., v. UNITED STATES.

### No. K—92.

Court of Claims.
March 13, 1933.

For original opinion, see 59 F.(2d) 263.

John F. Hughes and Davis, Polk, Wardell, Gardiner, & Reed, all of New York City, for plaintiff.

George H. Foster, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

On Plaintiff's Second Motion For a New Trial.[1]

LITTLETON, Judge.

On the submission of this case this court, in an opinion published June 6, 1932 [59 F. (2d) 263], held that plaintiff was not entitled to recover. The basis of the suit to recover an alleged overpayment of tax was that plaintiff's closing inventory for the fiscal year ending June 30, 1920, had been overstated and, therefore, its income for that year had been determined in excess of the correct amount. The plaintiff, who employed the basis of cost or market, whichever was lower, for valuing its inventories, contended, and now contends, as a basis for recovery, that "market," when properly determined, was much lower than that allowed by the Commissioner of Internal Revenue.

The question involved arose under section 203 of the Revenue Act of 1918 (40 Stat. 1060), which authorized the use of inventories whenever in the opinion of the Commissioner inventories were necessary in or-

---

[1] No opinion filed on first motion.

der clearly to determine income, which section provided further that the inventories should be taken upon such basis as the Commissioner, with the approval of the Secretary of the Treasury, should prescribe as conforming to the best accounting practice in a given trade or business and as most clearly reflecting income. Under the authority of section 203 the Commissioner promulgated various regulations governing the use of inventories. Art. 1582 of Regs. 45 provided that "inventories must be valued at (a) cost or (b) cost or market, as defined in Art. 1584 as amended, whichever is lower." Art. 1584 of the same regulations provided, in so far as here material, as follows:

"Under ordinary circumstances, and for normal goods in an inventory, 'market' means the current bid price prevailing at the date of the inventory for the particular merchandise in the volume in which usually purchased by the taxpayer, and is applicable in the cases (a) of goods purchased and on hand, and (b) of basic elements of cost (materials, labor, and burden) in goods in process of manufacture and in finished goods on hand; exclusive, however, of goods on hand or in process of manufacture for delivery upon firm sales contracts (i. e., those not legally subject to cancellation by either party) at fixed prices entered into before the date of the inventory, which goods must be inventoried at cost. Where no open market exists or where quotations are nominal, due to stagnant market conditions, the taxpayer must use such evidence of a fair market price at the date or dates nearest the inventory as may be available, such as specific purchases or sales by the taxpayer or others in reasonable volume and made in good faith, or compensation paid for cancellation of contracts for purchase commitments. Where the taxpayer in the regular course of business has offered for sale such merchandise at prices lower than the current price as above defined, the inventory may be valued at such prices less proper allowance for selling expense, and the correctness of such prices will be determined by reference to the actual sales of the taxpayer for a reasonable period before and after the date of the inventory. Prices which vary materially from the actual prices so ascertained will not be accepted as reflecting the market."

The same regulation for valuing inventories was adopted and continued in Art. 1584, Reg. 61, under the Revenue Act of 1921 and subsequent acts of 1924, 1926, 1928, and 1932.

The defendant contended that plaintiff was a manufacturer of a substantial part of the goods in its inventory and that, therefore, both as to the finished goods as well as goods in process subsection (b) of Art. 1584, supra, applied. The court sustained the defendant's contention, holding, in effect, that under the commissioner's regulations referred to, plaintiff, a manufacturer, must determine the "market" for its goods in process and finished goods on the basis of the basic elements of cost (material, labor, and burden), entering into the production of such goods (that is, reproductive cost to plaintiff at June 30, 1920), rather than, as contended by plaintiff, on the basis of the current bid price prevailing in the open market (herein referred to as replacement market) for such goods on the inventory date, and that since such regulations had been in effect for a long period of years and had been uniformly sustained by the courts, it was too late to question their correctness. It was further held that, since plaintiff had submitted no evidence to show market for the basic elements of cost entering into its inventory, a revaluation of the inventory on the basis of market could not be permitted and recovery must be denied.

Plaintiff's first motion for a new trial was based on the claim that it should be given a further opportunity to submit proof to show market for the basic elements of cost on the inventory date of the goods entering into its inventory. This motion was overruled for the reason that plaintiff not only had every opportunity to submit evidence on this point at the hearing of the case, but had objected to such evidence when offered by the defendant.

By a second motion, a new trial is now sought on the ground that the court was misled by the defendant as to the practice followed by the Internal Revenue Bureau in determining "market" for the goods produced by a manufacturer and contained in its inventory on a given date and that the Commissioner's regulations permit that for which the plaintiff originally contended and which the court refused to allow in its decision of the case. We do not understand that plaintiff disagrees with what was done, in so far as raw materials (in its case, grey goods) and goods in process are concerned, but objects specifically to the conclusion that "market" for its finished goods must be determined on the basis of the basic elements of cost entering therein, that is, reproductive cost on the inventory date instead of on the basis of the prevailing market price on the inventory date for the finished product. Nor do we understand that plaintiff contends that the regulations are unreasonable or that they should be

overturned or rejected. The plaintiff appears to be in accord with our decision to the extent that it holds that the regulations must be the guide in deciding the question at issue, but differs with the court as to the interpretation which should be given thereto. In other words, we are not here concerned with the question whether a more equitable or better result would be obtained under changed regulations, but rather with an interpretation of the regulations which are now in effect and which have been in effect since promulgation under the Revenue Act of 1918.

This brings us to the specific question involved in the case, namely: What do the regulations provide as the basis for valuing, that is, determining market for, goods which are produced by a manufacturer and held by him on a given inventory date? The regulations heretofore quoted state that "market" is applicable in the cases "(a) of goods purchased and on hand, and (b) of basic elements of cost (materials, labor, and burden) in goods in process of manufacture *and in finished goods on hand.*" (Italics supplied.) Admittedly, goods produced by a manufacturer are not goods purchased; they are goods produced, and, therefore, subsection (a) furnishes no guide for the valuation in question. But subsection (b) specifically provides that "market" shall be applicable to the basic elements of cost in finished goods, and it is difficult to understand why this does not authorize "reproductive cost" as opposed to "replacement market." Plaintiff admits that under the same provision "reproductive cost" is proper as "market" for goods in process but not for finished goods. We are not informed by what process of reasoning such a conclusion is reached. Statutes and regulations are not intended as traps for the unwary but should be given an interpretation which is easily understood from the words used. The conclusion sought by plaintiff cannot be reached unless we depart from such a rule. If we should adopt plaintiff's position, the portion of the regulations providing that "market" shall be applicable to the basic elements of cost in finished goods would play no part in an inventory valuation, since if we value finished goods which are produced by a manufacturer on the basis of current bid prices prevailing in the open market there could be no purpose in determining market for the basic elements of costs entering into the production of such goods.

We interpret the regulation in question as providing, in the case of a manufacturer who is on the basis of cost or market, whichever is lower, that its inventory of finished goods should be determined in the following manner: (1) The cost of producing such goods should be determined by taking the cost of all raw materials purchased to produce such goods and adding thereto the expense of labor and burden attributable to their manufacture. (2) The "market" for such goods should be determined by applying to the same elements prices prevailing on the inventory date—that is, what it would cost to purchase raw materials on that date, what the prevailing wage scale was on that date, etc. The lower of the two foregoing amounts should be used except (3) in the case "where the taxpayer in the regular course of business has offered for sale such merchandise at prices lower than the current price as above defined, the inventory may be valued at such prices, less proper allowance for selling expense." We do not understand that plaintiff contends for the use of the third comparative set out above (there is no evidence that it offered its finished goods at the prices contended for), but that it apparently desires that a fourth comparative be set up which it contends would be advantageous to it, namely, a valuation of its finished goods on the basis of what it would cost to replace such goods in the open market on its inventory date, as disclosed by expert testimony. In other words, instead of three comparatives the plaintiff contends that we should have four, and the lowest of the four should be used.

It may be that the Commissioner of Internal Revenue, under the authority granted by section 203, supra, could have provided the fourth method, but such is not the question presented in this case. We are here concerned with what the regulations provide, not what they might have provided. A careful study of the regulations leads us to the conclusion that the fourth method, i. e., "replacement market," was not provided in the original regulation and has not since been provided. These regulations have been in effect in practically unchanged form since shortly after the enactment of the Revenue Act of 1918, and, as we stated in our original decision of this case, it is now too late to enter into an academic discussion as to whether they conform "to the best accounting practice in the trade or business and as most clearly reflecting the income." No suggestion has been made that good accounting practice in plaintiff's trade or business is violated by the regulations. During the time the regulations have been in effect thousands of cases have been closed, and presumably the Commissioner has followed the regulations and closed such cases in accordance there-

with. Moreover, it seems reasonable to us that in many cases at least the use of reproductive cost would be more favorable to a taxpayer in a given year than replacement market, since it is hardly to be supposed· that a business man would manufacture goods unless the cost of producing such goods was less than their cost in the open market. Which method would be the more favorable in the greater number of cases we do not know, but inasmuch as the Commissioner under the statute has, by his regulations, provided for the use of cost or market, whichever is lower, and has defined "market" in a manner which seems most conservative, and the regulations governing such goods have remained undisturbed over a long period of years when many cases have been closed thereunder, a plea of inequity or unreasonableness in such application of the regulations does not seem to us to be well taken.

Plaintiff urges, however, that a different interpretation from that stated above has prevailed in the Bureau of Internal Revenue, as is evidenced by G. C. M. 9401, X–1 C. B. 102, published May 4, 1931. That opinion was called to the attention of the court when this case was submitted, but we deemed it unnecessary specifically to discuss it in the decision rendered at that time. In view, however, of the earnestness with which it is urged upon us as the principal basis for a new trial we have again examined it, but we find nothing therein to cause us to change our former conclusion. Admittedly the question considered in G. C. M. 9401· was similar to the one now being considered in this case, but we do not find any reasoning in that ruling (except possibly by inference) to show that the regulations provide for the result reached. The opinion largely deals with the fallacy and inequities of providing a different method for valuing inventories in the case of a "trader" as distinguished from a "manufacturer" and with the two . opposing views which were urged in that case as the basis for valuing the finished goods of a manufacturer. We fail to find in the opinion any suggestion as to how the conclusion therein reached, namely, that market for finished goods in the case of .a manufacturer should be determined on the basis of the current bid price prevailing in the open market for like goods on the inventory date, can be justified under the language of the regulations. Moreover, there is no suggestion that the rule adopted in that case represents what has been the practice of the bureau. On the contrary, the opinion states, after discussing the two views, that "It is the opinion of this office that of the two views above indicated, the second view [replacement market] reaches the better result and is the view which should be *adopted* by the bureau." (Italics ours.) This is quite different from saying that the conclusion reached represents what has been the practice during a long period of years since the regulation in question was promulgated or that it follows from the language of the regulation itself. On the contrary, the use of the word "adopted" would imply that a new rule or policy not theretofore followed was being adopted, but even the rule indicated in said memorandum of the General Counsel was not, in fact, adopted in Regs. 77 under the Revenue Act of 1932. Rulings and decisions by the department charged with the administration of a statute are greatly respected by the courts and are followed unless they depart from the letter or the spirit of the statute. With respect to the question involved in this case and the matter of inventories generally, the statute has imposed upon the commissioner, with the approval of the Secretary of the Treasury, the duty of providing by regulations for the use of such inventories and the basis on which they are to be taken. The regulation under consideration is, therefore, the law with respect to inventories and the basis on which they are to be valued, and unless such regulation authorizes a valuation of inventories by a manufacturer on the basis of "replacement market," the court cannot require that this method be used. From the best consideration that we have been able to give the matter, we have reached the conclusion that the regulation in question is not contrary to good accounting, and that the valuation of an inventory by a manufacturer on the basis of replacement market for the finished product on the inventory date is not authorized by the regulation ·and is therefore not authorized by the statute. The plaintiff is not, therefore, entitled to recover.

G. C. M. 9401, supra, was not a regulation by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury as required by the statute, and, notwithstanding the respect which we entertain for the opinions of the General Counsel of the Bureau of Internal Revenue, the court cannot give to Memorandum 9401 the force and effect of a regulation under the statute.

It is stated in plaintiff's brief in support of its second motion for a new trial that Memorandum 9401 of the General Counsel had the approval of the Commissioner of Internal Revenue and the Undersecretary of the Treasury, but there is no evidence of this, and

the said ruling, as officially published, bears no evidence of such approval as is required by the statute with respect to regulations authorized thereby. The acquiescence by the Commissioner and the Undersecretary of the Treasury of bureau rulings in a particular case without formal written approval thereof and publication as a regulation cannot be treated by the court as a regulation deliberately considered and made by the Commissioner with the approval of the Secretary of the Treasury, under the statute. Moreover, in Reg. 77, adopted and promulgated February 10, 1933, the regulation corresponding to the regulation here in question, and quoted above, has not been changed to conform to the conclusion reached by the General Counsel in his Memorandum 9401, supra, as we understand its meaning.

In view of the foregoing we are of the opinion that the second motion for a new trial is not well taken, and it is accordingly overruled. It is so ordered.

BOOTH, Chief Justice, took no part in this decision on account of illness.